IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| HARRY L.,[1] | ) |
| *Plaintiff*, | ) |
| v. | )  Civil No. 3:25-cv-93 (DJN) |
| FRANK BISIGNANO,[2] Commissioner of Social Security, | ) |
| *Defendant*. | ) |

**REPORT AND RECOMMENDATION**

In this action, Plaintiff Harry L. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny his Title II application for disability insurance benefits and Title XVI application for Supplemental Security Income ("SSI"). This matter comes before the Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment. (ECF Nos. 5, 12, 15.) The motions have been fully briefed (ECF Nos. 12, 13, 15, 16), rendering this matter ripe for review.

Plaintiff moves the Court to vacate the Commissioner's decision denying benefits and remand for further administrative proceedings, including a new hearing and decision. (ECF No. 13, at 29.) As the basis for such relief, Plaintiff argues that the Administrative Law Judge's ("ALJ's") residual functional capacity ("RFC") determination is not supported by substantial

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Frank Bisignano was sworn in as the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for the former Acting Commissioner as Defendant in this action. 42 U.S.C. § 405(g). No further action need be taken.

evidence in part because he failed to provide sufficient reasons for rejecting Plaintiff's subjective complaints. (ECF No. 13, at 1, 25-29.)[3] In response, the Commissioner argues that the ALJ appropriately considered Plaintiff's subjective complaints and explained that he found those complaints not entirely consistent with the record and Plaintiff's activities. (ECF No. 15, at 27-30.) The Commissioner asks that the Court affirm the ALJ's decision. (ECF No. 15, at 2.)

For the reasons discussed below, the Court finds that the ALJ failed to explain why he found Plaintiff's subjective complaints inconsistent with the totality of the evidence and thus failed to "build an accurate and logical bridge from the evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)) (internal quotation marks omitted). Therefore, the Court RECOMMENDS that: (1) Plaintiff's Motion for Summary Judgment (ECF No. 12) be GRANTED; (2) Defendant's Motion for Summary Judgment (ECF No. 15) be DENIED; (3) the final decision of the Commissioner be REVERSED; (4) the case be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Report and Recommendation; and (5) final judgment be entered under Rule 58 of the Federal Rules of Civil Procedure.

## I.  PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and SSI, both alleging disability beginning on December 1, 2016. (Administrative Record ("R.") at 153, 154.)[4] In his application,

---

[3] Plaintiff asserts three other assignments of error challenging the ALJ's evaluation of medical opinion evidence and contending that these errors also resulted in a flawed RFC. (ECF No. 13, at 1, 16-24.) Because the Court recommends remand based on an inadequate subjective complaint analysis, the Court declines to reach these other assignments of error but invites the ALJ to consider them on remand.

[4] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. Civ. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

Plaintiff alleged that he suffered from hurthle cell stage 2, colon cancer stage 3, diabetes type 2, and spinal stenosis. (R. at 155, 166.) Plaintiff's claims were denied initially and again upon reconsideration. (R. at 131, 148, 165, 177.)

Plaintiff requested a hearing before an ALJ, and one was held on February 23, 2022. (R. at 78-115, 231-32.) On August 25, 2022, the ALJ issued a written decision, finding Plaintiff not disabled under the Social Security Act ("the Act"). (R. at 181-98.) On February 13, 2023, the SSA Appeals Council granted Plaintiff's request for review and remanded the case back to an ALJ. (R. at 208-09.)

A new hearing was held on August 31, 2023. (R. at 38-77.) On December 27, 2023, the ALJ issued a new written decision, finding Plaintiff not disabled under the Act. (R. at 17-29.) On December 20, 2024, the SSA Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1-3.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ reviews the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determines whether the medical impairments meet or equal an impairment listed in the regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ determines the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

At step four, the ALJ assesses whether the claimant can perform his or her past employment given his or her RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, the Court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Id.* at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (second alteration in original)); *see Craig*, 76 F.3d. at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the Court must affirm, regardless of whether the Court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the Court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

### III.  THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim under the five-step evaluation process. (R. at 17-29); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio*, 780 F.3d at 634. At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity since December 1, 2016 (the alleged onset date), specifically in 2018. (R. at 19.) However, the ALJ found a continuous twelve-month period during which the Plaintiff did not engage in substantial gainful activity, and the remaining findings addressed those periods. (R. at 19.)

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, osteoarthritis, gastrointestinal disorder, affective mood disorder, PTSD, Schatzki ring, dysphagia, and migraines. (R. at 20.) At step three, the ALJ concluded that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20-23.)

The ALJ then determined Plaintiff's RFC. (R. at 23-26.) The ALJ found that Plaintiff retained the ability to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [Plaintiff] can stand and/or walk a total of 4 hours per day. He can occasionally push and pull with the left upper extremity and the left lower extremity. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He can never climb ropes, ladders, and scaffolds. He can frequently handle, finger, and feel bilaterally. He can frequently bend or turn his neck. He must avoid concentrated exposure to fumes, odors, dusts, gases, and hazards, such as dangerous machinery and unprotected heights. He can perform simple, routine tasks, requiring no more than occasional changes in the work setting, with no production rate for pace of work (e.g. assembly-line work). [Plaintiff] can tolerate occasional interaction with the general public and co-workers.

(R. at 23.)

In arriving at the RFC, the ALJ first summarized Plaintiff's subjective complaints. (R. at 23-24.) Plaintiff testified that he has struggled with vomiting since the end of radiation treatment

in 2016. (R. at 23-24.) Plaintiff complained of difficulties with extended walking, standing, bending, and lifting due to his nausea and vomiting. (R. at 24.) He reported "constant" headaches, leg numbness, and back pain. (R. at 24.)

Next, the ALJ summarized Plaintiff's medical records pertaining to his mental and physical impairments. (R. at 24-25.) Regarding his physical impairments, a November 2018 examination of the Plaintiff "showed no thyroid cancer recurrence and no dysphagia." (R. at 24.)

In July 2020, Plaintiff underwent a consultative examination with Dr. Asmamaw. (R. at 24.) Upon evaluation, Plaintiff had decreased range of motion in the cervical spine, with a normal range of motion in all other joints. (R. at 24.) The straight leg raising test was negative bilaterally, and the FABER test was positive on the right. (R. at 24.) Plaintiff ambulated with a normal gait and without any assistive device. (R. at 24.) Plaintiff demonstrated the ability to pinch with both hands without difficulty. (R. at 24.) The examination revealed normal sensation in all dermatomes, except the right C6-7, 4/5 strength in the upper extremities, and 5/5 strength in the lower extremities. (R. at 24.)

Another physical consultative examination was performed in June 2021, again with Dr. Asmamaw. (R. at 25.) Once again, range of motion in all joints was normal, except for the cervical spine, which had decreased range of motion. (R. at 25.) The straight leg raising test and FABER test were both positive bilaterally. (R. at 25.) Plaintiff ambulated with an antalgic gait and his thoracolumbar range of motion slightly decreased, but Plaintiff did not use an assistive device. (R. at 25.) The examination showed Plaintiff's strength was 4-/5 or 4/5 in the upper and lower extremities. (R. at 25.) Plaintiff's "sensation to pinprick and touch was intact for all dermatomes, except for the bilateral C6-S1 area." (R. at 25.) Plaintiff's reflexes were normal and proprioception was intact bilaterally. (R. at 25.)

An X-ray of Plaintiff's lumbar spine revealed only mild degenerative changes. (R. at 25.) In July 2022, a CT scan of Plaintiff's chest revealed "stable sub-6 mm pulmonary nodules in the right middle lobe and right lower lobe, hepatic steatosis, and stable left adrenal adenoma." (R. at 25.) The ALJ noted that medical records from 2023 did not document any worsening of the Plaintiff's symptoms. (R. at 25.) Specifically, in March 2023, a physical evaluation was performed and there were no abnormal physical findings. (R. at 25.)

The ALJ also considered a mental health evaluation that was performed in August 2020. (R. at 24.) During the evaluation, Plaintiff presented with adequate appearance and hygiene, but rapport was poorly established. (R. at 24.) He acted annoyed and hostile towards the examiner. (R. at 24.) However, Plaintiff's eye contact and expressive and receptive language were all within normal limits. (R. at 24.) His affect had a broad range, normal intensity, and euthymic quality. (R. at 24.) Plaintiff denied any suicidal or homicidal ideation, as well as perceptual abnormalities. (R. at 24.) Plaintiff's thought process was linear and he was oriented to self, situation, place, and time. (R. at 24.) His language, comprehension, fund of knowledge, and judgment appeared average, as he was able to follow simple commands, spell words, and answer questions. (R. at 24.) Plaintiff's understanding of his mental illness and abstraction both appeared within normal limits. (R. at 24.) He demonstrated average working memory skills, with immediate recall intact and delayed recall moderately compromised. (R. at 25.) Plaintiff could count money and did not demonstrate any challenges performing calculations. (R. at 25.) His copy of simple geometric shapes was mildly compromised, but his attention and concentration were within normal limits. (R. at 25.)

After considering the record evidence, the ALJ found that Plaintiff could work at the light exertional level with additional limitations due to his impairments. (R. at 25.) The ALJ

acknowledged Plaintiff's decreased strength and range of motion in his spine and 4/5 strength in the upper and lower extremities, as well as his depressive moods and difficulties with concentration. (R. at 25.) While Plaintiff claimed he used a walker or cane for long distances, the ALJ explained that the "evidence has not established medical necessity for an assistive device" and that "[e]ven if a cane was necessary . . . the vocational expert testified that jobs would remain." (R. at 25.)

The ALJ also considered the medical opinions and prior administrative medical findings. (R. at 25-26.) The ALJ first considered the opinions of the state agency psychiatric consultants and medical consultants. (R. at 26.) According to the ALJ, the state agency psychiatric consultants opined that Plaintiff had moderate mental limitations, except for a mild limitation in understanding, remembering, or applying information. (R. at 26.)[5] The ALJ found these opinions partially persuasive because they were partially supported by their analysis of the evidence but not entirely consistent with the treating source objective evidence. (R. at 26.) Plaintiff demonstrated depressed mood and some deficiencies in concentration, but normal memory skills and judgment. (R. at 26.) The ALJ explained that this evidence supports moderate limitations in interaction and concentration, but only mild limitations in understanding and adaptation. (R. at 26.)

According to the ALJ, the state agency medical consultants opined that the Plaintiff could work at a light exertional level with no other limitations. (R. at 26.)[6] The ALJ found these opinions

---

[5] The Court notes this is not an accurate description of the state agency psychiatric consultant's opinion on reconsideration, which found Plaintiff less limited. (R. at 159-60, 171-72.) The ALJ appears to have considered their findings regarding "paragraph B" criteria only and failed to discuss their mental RFC assessment. (R. at 123, 127-29, 140, 144-46, 159-60, 163-64, 171-72, 175-76.) On remand, the ALJ should address these issues as well.

[6] Again, the ALJ lumps the findings of the state agency medical consultants together, but on reconsideration, the state agency medical consultant made different, more restrictive findings. (R. at 162-64, 174-76.) The ALJ should consider these prior administrative findings separately on remand.

only partially persuasive because they were not entirely supported by the state agency medical consultants' review of the record and only partially consistent with the objective evidence. (R. at 26.) Specifically, the ALJ determined that Plaintiff's impairments "caused weakness and decreased range of motion in the upper and lower extremities, which necessitates more restrictive limitations." (R. at 26.)

The ALJ then considered the medical opinion of Abraham Asmamaw, M.D., who opined that Plaintiff could stand for half an hour to one-hour intervals, which totaled four to six hours. (R. at 26.) He limited Plaintiff to two to four hours of walking, lifting and carrying five to ten pounds, and regular rest. (R. at 26.) The ALJ found this opinion only partially persuasive, as it was inconsistent with Dr. Asmamaw's own evaluation of Plaintiff and the other objective evidence. (R. at 26.) The ALJ noted that Plaintiff's upper and lower extremity strength was 4/5, which indicated some weakness, but not enough to limit him to a sedentary lifting exertional level. (R. at 26.) Additionally, Plaintiff performed substantial gainful activity after his alleged onset date, which proved "greater functionality." (R. at 26.)

The ALJ also considered the opinion of Carol McCleary, Psy.D., who opined that Plaintiff had mild to marked mental limitations. (R. at 26.) The ALJ found her opinion only partially persuasive because it was inconsistent with the record evidence and Dr. McCleary's own examination findings. (R. at 26.) Plaintiff demonstrated some abnormal symptoms, but none that pointed to marked mental limits. (R. at 26.)

Finally, the ALJ considered the medical opinion of Virind Gupta, M.D., who opined that Plaintiff could not lift more than fifteen to twenty pounds. (R. at 26.) The ALJ once again found this opinion partially persuasive because it "lack[ed] objective backing" from Dr. Gupta's own evaluation and was not entirely consistent with other objective medical evidence. (R. at 26.)

Regardless, the ALJ limited Plaintiff to a "reduced light exertional level due to the combined effects of his impairments." (R. at 26.)

At step four, the ALJ found that Plaintiff could not perform his past relevant work. (R. at 26-27.) The ALJ then determined Plaintiff's vocational factors, including that he had at least a high school education and met the definition of a younger individual on the alleged onset date. (R. at 27.) At step five, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy considering his age, education, work experience, and RFC. (R. at 27-28.) The ALJ adopted the vocational expert's testimony that Plaintiff could perform the jobs of final inspector, masker of electronics, assembler of electrical accessories, table worker, masker, and weight tester. (R. at 27-28.) Therefore, the ALJ found Plaintiff not disabled from December 1, 2016 (the alleged onset date) through December 27, 2023 (the date of the decision). (R. at 28.)

## IV. ANALYSIS

Plaintiff argues that the ALJ "failed to properly consider and explain his analysis of Plaintiff's subjective allegations." (ECF No. 13, at 28-29.) In response, the Commissioner contends that "the ALJ provided legally sufficient reasons in finding that Plaintiff was not as limited as he alleged." (ECF No. 15, at 28.) Having reviewed the ALJ's decision and the record, the Court finds that the ALJ failed to provide a sufficient narrative explanation supporting his conclusion that Plaintiff's subjective complaints are inconsistent with the totality of the evidence.

The regulations provide a two-step process for evaluating Plaintiff's subjective complaints. 20 C.F.R. §§ 404.1529, 416.929; *see also* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, "the ALJ must determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (citing 20 C.F.R.

11

§ 404.1529(b); SSR 16-3p).  Second, "after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled."  *Id.*  The ALJ must consider all available evidence in this determination, including objective medical evidence, "an individual's statements about the intensity, persistence, and limiting effects of symptoms," and medical opinions and statements from others.  *Id.*  The claimant does not need to produce objective evidence to satisfy this second prong.  *Id.*

Here, the ALJ acknowledged the two-step process in considering Plaintiff's subjective complaints.  The symptoms and limitations alleged by Plaintiff included an inability to walk more than about forty feet, lift more than a gallon of milk with both hands, stand for more than fifteen minutes without changing positions, and sit for more than ten minutes without changing positions.  (R. at 49.)   Plaintiff also testified to having problems with grip in both hands, issues with feeling and fingering, neuropathy in his hands and feet, daily bouts of vomiting, and a frozen neck preventing him from moving his head without severe pain.  (R. at 58-62.)  He stated that he had headaches every day and felt dizzy or nauseous all the time.  (R. at 50, 59.)  After summarizing Plaintiff's subjective complaints, the ALJ found at the first step that Plaintiff's medically determinable impairments could lead to the alleged symptoms.  (R. at 24.)

At the second step, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record *for the reasons explained in [the ALJ's] decision*."  (R. at 24 (emphasis added).)  However, the ALJ did not identify those reasons elsewhere in his decision.  Without more, the Court must guess the ALJ's reasons for finding Plaintiff's subjective complaints inconsistent with the record, something the Court should not do.  *See Derrickson v.*

12

*Astrue*, No. 2:11-cv-508, 2012 WL 3555502, (E.D. Va. June 29, 2012), *report and recommendation adopted*, 2012 WL 3561853 (E.D. Va. Aug. 16, 2012) ("On review, th[e] Court is not permitted to infer reasons to support the ALJ's decision.").

The Court acknowledges that the ALJ provided a general summary of the medical evidence and evaluated the medical opinion evidence. But in doing so, he failed to draw out inconsistencies between that evidence and Plaintiff's allegations. While the Commissioner invites the Court to infer that the ALJ relied on normal findings on physical and mental examination (ECF No. 15, at 28-29), the ALJ also discussed abnormal findings. After summarizing the medical evidence, the ALJ simply concluded:

> I have appropriately accommodated [Plaintiff]'s degenerative disc disease, osteoarthritis, gastrointestinal disorder, affective mood disorder, PTSD, Schatzki ring, dysphagia, and migraines with the limitations set forth above. [Plaintiff] is limited to a reduced light exertional level due to his impairments. He has decreased strength and range of motion in the spine and 4/5 strength in the upper and lower extremities. His psychiatric symptoms include depressive moods and difficulties with concentration.

(R. at 25.) This conclusory finding that he "appropriately accommodated" Plaintiff's severe impairments in the RFC limitations without more fails to inform the Court how he made those accommodations. (R. at 25.) The ALJ explained that Plaintiff has decreased strength and range of motion in the upper and lower extremities that limit him to a reduced light exertional level but did not explain how any of Plaintiff's other subjective complaints are either addressed by the RFC limitations or are inconsistent with the record evidence. (R. at 25.)[7] Instead, elsewhere in the

---

[7] One of the only instances where the ALJ attempts to explain an inconsistency between Plaintiff's subjective complaints and the medical record is regarding Plaintiff's cane use. (R. at 25.) The Commissioner points to this as support for the ALJ's subjective complaint analysis. (ECF No. 15, at 29.) The Commissioner further contends that "the ALJ considered Plaintiff's activities," specifically his ability to perform work at the substantial gainful activity level in 2018, one year of the alleged seven-year disability period. (ECF No. 15, at 29-30.) Considering the extent of

13

decision, he again simply concluded that Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms . . . are inconsistent because the totality of the evidence indicates they are not disabling." (R. at 24.)  A "bare conclusion that [Plaintiff's] statements lack credibility because they are inconsistent with 'the above functional capacity assessment' does not discharge the duty to explain." *Derrickson*, 2012 WL 3555502, at *16 (quoting *Kotofski v. Astrue*, 2010 WL 3655541, at *9 (D.Md. Sept. 14, 2010)).

Even reading the ALJ's decision as a whole, it is unclear what the ALJ considered in determining that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the evidence.  Instead, the Court is left to guess from the ALJ's abbreviated discussion concerning Plaintiff's subjective complaints and a conclusory summary of the medical evidence what the ALJ found to be inconsistent.  In light of the flawed subjective complaint analysis, the ALJ also failed to explain how he accounted for Plaintiff's limitations.  This error precludes meaningful judicial review of the RFC determination and warrants remand.  *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("[T]he ALJ must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'" (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016))), *superseded on other grounds as recognized in Rogers v. Kijakazi*, 62 F.4th 872, 878-80 (4th Cir. 2023).  Because the Court finds that the ALJ's error in evaluating Plaintiff's subjective complaints justifies remand, the Court declines to address Plaintiff's remaining assignments of error regarding the ALJ's consideration of the medical opinion evidence.  On remand, however, the ALJ should also consider those additional allegations of error.

---

Plaintiff's subjective complaints and the span of the alleged disability period, those two instances of analysis alone do not serve as substantial evidence for the ALJ's findings.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that: (1) Plaintiff's Motion for Summary Judgment (ECF No. 12) be GRANTED; (2) Defendant's Motion for Summary Judgment (ECF No. 15) be DENIED; (3) the final decision of the Commissioner be REVERSED; (4) the case be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Report and Recommendation; and (5) final judgment be entered under Rule 58 of the Federal Rules of Civil Procedure.

Let the clerk forward a copy of this Report and Recommendation to the Honorable United States District Judge David J. Novak and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ 
Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: February 5, 2026